## THE MANNIE SWAN.

(District Court, S. D. New York. May 22, 1906.)

SALVAGE—RIGHT TO AWARD—SERVICES WHICH WERE UNNECESSARY AND DETRIMENTAL.

A tug *held* not entitled to a salvage award for pumping water upon and into a barkentine laden with kerosene which was on fire, where the preponderance of the evidence showed that when she arrived the fire was under control and the danger over through the efforts of another tug, and she was informed that her services were not needed, notwithstanding

which she insisted on pumping into the hold, where there had been no fire, to the damage of the cargo.

[Ed. Note.—Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

In Admiralty. Suit for salvage.

John F. Foley, for libellants.

Wing, Putnam & Burlingham, for claimant.

ADAMS, District Judge. This action was brought by George W. Stapleton, the master and owner of the steamtug Stapleton, and the other members of the crew, consisting of two men, the engineer and deck hand, against the Barkentine Mannie Swan and her cargo of 28,500 cases of kerosene oil, to recover salvage services alleged to have been rendered in assisting to extinguish a fire which occurred on the vessel on the 12th day of January, 1906, while she was anchored abreast of Stapelton, Staten Island. The answer admits that the Stapleton went alongside of the Swan on the starboard side and took some hose aboard but alleges that the fire was then under control through the efforts of the steam pilot boat New Jersey, which had been summoned from the vicinity, and in a few minutes got complete control of the fire so that nothing remained to excite apprehension beyond some smouldering bedding, with smoke and steam. It is further alleged by the answer that when the Stapleton came alongside, her captain was informed that the services of his tug were not needed, but he insisted upon starting his pumps and playing into the house on deck and throwing a second stream through the forward hatch into the cargo, and that the Stapleton's efforts were of no value and through the pumping into the hold actually resulted in damage to the cargo.

The Swan when built, 15 or 16 years ago, cost $38,000, but was kept in good condition and worth at the time of the fire about $12,000. The cargo before the Stapleton threw water on it was worth about $23,000. It was damaged by the water so that some expenditure was necessary to recondition about 3,000 cases, which were rusted with water and had to be cleaned off, oiled and repacked. The cost of this work does not appear as it was done principally by the Swan's crew, consuming about 5 days.

The question in the case is, were the Stapleton's services of any value. If they were, the libellants should be recompensed, although they were warned when they came to the vessel that the fire was substantially out and their services not needed. On the other hand, if they forced their services where they were not required, they should receive the court's disapproval instead of a salvage award.

The controversy turns simply upon the credibility to be given to the conflicting accounts. The libellants said that the conflagration was raging and dangerous when they reached the vessel, especially on the starboard side, to which they directed their attention. The witnesses for the Swan said that the fire was substantially subdued on that, as well as on the port side, where the New Jersey was lying, and still working.

It appears that when the fire was discovered, the master of the Swan was ashore but was telephoned to at the New York office of the

vessel in South street by the boatswain, who went ashore in a small boat with the master's wife and the steward. When they were approaching the shore, they saw the New Jersey about leaving the pier, opposite the Swan, where she had been lying, for the purpose of going to the assistance of the Swan. The weather had been foggy but lightened up at this time sufficiently for those on the New Jersey to see that the Swan was on fire. The New Jersey·threw off her lines and was starting for the Swan, when the boat containing the master's wife and others, reached the pier and asked those on the New Jersey to go to the assistance of the Swan, some 400 yards away. They immediately did so, and reaching the vessel, found there was a fire of some magnitude in the deck house forward containing the engine room, boatswain's room, forecastle, cook's room and galley. This was about 11:35 o'clock. They went to the Swan's port side and put out three lengths of hose, one of which they used on the port side, one through a hatch in the top of the house, and the third on the starboard side, by running it around the deck house forward. The crew of the Swan, consisting of 11 men, had previously vainly endeavored to subdue the flames by the use of buckets. The efforts of the New Jersey were almost immediately effective and the fire in the course of· about 20 minutes, was under control, although still smouldering. The Stapleton at this time came alongside on the starboard side, and put her hose aboard, notwithstanding the notice she received of the fire being under control of the New Jersey.

After anxious consideration of the testimony, I have concluded that the Stapleton's services were not needed, of which she had due notice before she rendered them. It appears that they were not only useless but actually detrimental, because there was no fire, or danger of it, in the hold. The deck had been burned to the depth of about ¾ of an inch but the danger was all over when the Stapleton arrived and the water pumped by the New Jersey then actually running over the coamings, some 18 inches high, which surrounded the house on the deck of the vessel. The testimony on behalf of the vessel, and especially that of the pilots from the New Jersey, who were not interested in the matter, having been settled with by the Swan, is entitled to greater credence than that on behalf of the Stapleton, the owner and crew of which were greatly interested in establishing their claim. The testimony of some of the crew of the Swan, given on behalf of the Stapleton, is not entitled to much weight, as it appears that they were sedulously looked after by the master of the Stapleton and had some vague ideas of obtaining some benefit themselves from the proceedings instituted on behalf of the Stapleton.

Libel dismissed.